UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HATEM MOHAMED S. E. A. ABDOU,<br><br>Petitioner,<br><br>v.<br><br>GREGORY J. ARCHAMBEAULT,<br>Acting Field Office Director for ICE San Diego, et al.,<br><br>Respondents. | Case No.:  26-CV-2474 JLS (BJW)<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

Presently before the Court is Petitioner Hatem Mohamed S. E. A. Abdou's Petition for Writ of Habeas Corpus ("Pet.," ECF No. 1).  Also before the Court is Respondents' Return in Opposition ("Ret.," ECF No. 4) and Petitioner's Traverse ("Traverse," ECF No. 5).  The Court requested Petitioner's bond hearing transcript (ECF No. 6), which Petitioner provided ("Tr.," ECF No. 7).  The Court also requested supplemental briefing from Petitioner ("Pet'r Suppl.," ECF No. 9) and Respondents ("Resp't Suppl.," ECF No. 10) regarding Petitioner's advanced parole status.  For the reasons set forth below, the Court **GRANTS IN PART** Petitioner's Petition (ECF No. 1).

/ / /

/ / /

/ / /

26-CV-2474 JLS (BJW)

## BACKGROUND

On March 1, 2020, Petitioner entered the United States on a B2 visitor's visa and was added to his wife's asylum application. Pet. ¶ 15. Petitioner was granted employment authorization, purchased a home in Richmond, Texas, and leased an apartment in Ontario, California. *Id.* ¶ 17. Petitioner left the country several times from 2020 through 2025—each time re-entering on a visitor's visa. Ret. at 2. The most recent entry was on January 14, 2025, on a non-immigrant visa with advanced parole. *Id.* On April 1, 2026, while driving from Texas to California, Petitioner was stopped by Customs and Border Patrol, who detained him and brought him to the Imperial Regional Detention Center. Pet. ¶ 18. Petitioner was determined removable under 8 U.S.C. § 1227(a)(1)(B) as an individual who was admitted to the United States and remained longer than permitted by law (i.e., a visa overstay). Ret. at 2. Petitioner was placed into removal proceedings under § 1229a. *Id.*

On April 13, 2026, Petitioner had a bond hearing under § 1226(a) before an immigration judge ("IJ"). *Id.* The IJ denied bond based on flight risk after holding two hearings: the first on April 9, 2026, and the second on April 13, 2026. Tr. at 2. The IJ, discussing in depth the *Guerra* factors, found that Petitioner was a flight risk based on "not having a credible sponsor, . . . the ability to flee with access to extremely large amounts of money, . . . [how] in his own words, he has brought in between 1.5 and 1.8 million dollars into the United States" that are deposited into his bank accounts in foreign countries and then transferred into his United States bank accounts—of which Petitioner has not reported on his taxes—and his unclear living situation.[1] *Id.* at 89. Petitioner argues that the bond

---

[1] The evidence the IJ discussed at the hearings specifically includes: (1) Petitioner does not personally know his sponsor and testified that he only knows the sponsor's husband a little bit; (2) there were no other character letters written on his behalf from family or friends beyond the uncredible sponsor; (3) Petitioner owns multiple businesses in the United States and abroad yet only declared on his taxes $1,038 in earned income in 2024 and $108 in earned income in 2025 between him and his wife; (4) Petitioner testified that one of his companies pays him between $2,000 to $3,000 a month but Petitioner does not declare this on his taxes; (5) Petitioner transfers large sums of money every month, between $20,000 to $50,000, to himself from Dubai and Saudi Arabia to cover his expenses; (6) Petitioner, despite the large transfers of money from companies overseas every month, worked for Uber; (7) Petitioner was non-

2

hearing was not meaningful or constitutionally adequate because the IJ was predetermined to deny bond.  Pet. ¶ 20.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241.  *See* 28 U.S.C. § 2241(a).  The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals.  *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)).  However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court.  *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Petitioner now argues that the summary revocation of his release on advance parole without justification or consideration of his individualized circumstances violates the Due Process Clause.  Pet'r Suppl. at 2.  The Court agrees.[2]

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "[T]he Due

---

responsive throughout his questioning at the hearing; and (8) Petitioner was unclear about his living situation and was unable to explain why he has multiple residences and when he lives where.  Tr. at 83–89.

[2] The Court need not address Petitioner's original argument that the bond hearing was constitutionally insufficient because the Petition is resolved on due process grounds.  However, the Court notes that Petitioner received a constitutionally adequate bond hearing, as the IJ, in over 100 pages of Transcript, thoroughly considered the *Guerra* factors and concluded that Petitioner was a flight risk.  *See generally* Tr.; *see also Zhou v. Trump*, No. 25-CV-3503-JLS-DEB, 2026 WL 937125, at *3 (S.D. Cal. Apr. 7, 2026) (denying a bond hearing challenge when the record indicated the IJ applied the *Guerra* factors).

26-CV-2474 JLS (BJW)

Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi*, 792 F. Supp. 3d at 1032 (citing *Romero v. Kaiser*, No. 22-cv-20508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Petitioner was granted advance parole on September 18, 2024, and Respondents admitted Petitioner as a parolee into the United States on November 14, 2025.[3] Pet'r Suppl.

---

[3] While Petitioner's advanced parole was expired at the time of his detention, Petitioner's liberty "interest did not expire along with Petitioner's parole agreement." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). "Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted." *Id.* (citing *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)). Therefore, the expiration of Petitioner's parole does not impact the liberty interest in his release. *See, e.g., Omer G. G. v. Kaiser*, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) (finding the expiration of petitioner's parole did not extinguish his liberty interest); *Quiroga-Chaparro v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-1731 AC, 2025 WL 3771473, at *4 (E.D. Cal. Dec. 31,

at 2. "Advanced Parole permits a noncitizen to depart and return to the United States without jeopardizing their immigration status or grants parole to a noncitizen outside the country, allowing them to enter the country but prevents them from obtaining the status of a lawfully admitted alien." *Castellanos v. Casey*, No. 26-CV-1727-JES-BLM, 2026 WL 898307, at *2 (S.D. Cal. March 30, 2026) (first citing *Samirah v. Holder*, 627 F.3d 652, 655 (7th Cir. 2010); then citing 8 U.S.C. § 1255(i); and then citing 8 C.F.R. §§ 212.5(f), 245.1(a)). "When DHS wishes to revoke an advance parole that has been previously given, it is required that 'parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.'" *Shia Ass'n of Bay Area v. United States*, 849 F. Supp. 2d 916, 923 (N.D. Cal. 2012) (quoting 8 C.F.R. § 212.5(e)(2)(i)).

Respondents, albeit confusingly, concede that "consistent with this Court's previous ruling, the advanced parole creates a liberty interest."[4]  Resp't Suppl. at 2.  Therefore, Petitioner has a protected liberty interest in remaining out of custody.  *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1034 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025) ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Alvarenga Matute v.*

---

2025) (same); *Kazybayeva v. Warden of Otay Mesa Det. Ctr.*, No. 26-CV-0421-GPC-MMP, 2026 WL 280478, at *3 (S.D. Cal. Feb. 3, 2026) (same).

[4] Respondents' Supplemental Briefing specifically states, "As such, Petitioner's conceded that, consistent with this Court's prior ruling, the advanced parole creates a liberty interest." Resp't Suppl. at 2 (citing *Castellanos*, 2026 WL 898307). While this statement itself is unclear for multiple reasons, the Court infers that Respondents are conceding that, consistent with *Judge James E. Simmon's* opinion in *Castellanos*, Petitioner's advance parole creates a liberty interest

*Wofford*, 807 F. Supp. 3d 1120, 1128 (E.D. Cal. 2025) (finding petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See Matthews*, 424 U.S. at 335. Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his release on advanced parole. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining with and providing for his family. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's release on bond was revoked without providing him a reason for revocation or giving him an opportunity to be heard. Pet'r Suppl. at 4. Since DHS's determination that Petitioner should be released on parole because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the

6

government that the noncitizen is not a danger to the community or a flight risk."). "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk. . . ." *Saravia*, 280 F. Supp. 3d at 1760. Respondents do not oppose the Petition. *See generally* Ret. "Where as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 792 F. Supp. 3d at 1036; *Matute*, 807 F. Supp. 3d at 1130; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Ret.

Therefore, because Respondents detained Petitioner by revoking his parole in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Alegria Palma v. Larose et al.*, No. 25-cv-1942 BJC (MMP), slip op. 14 (S.D. Cal. Aug. 11, 2025) (granting a TRO based on a procedural due process challenge to a revocation of parole without a pre-deprivation hearing); *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *5 (S.D. Cal. Sept. 26, 2025) (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).

/ / /

/ / /

/ / /

26-CV-2474 JLS (BJW)

**Attorney's Fees**

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  Pet. at 20.  The EAJA provides in part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

The Court will consider an application requesting reasonable fees and costs under the EAJA that is filed within thirty days of the judgment.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

26-CV-2474 JLS (BJW)

**CONCLUSION**

Based on the foregoing, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1). The Court **ORDERS** the Government to immediately release Petitioner from custody subject to the conditions of his preexisting release. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his release and a hearing before a neutral decision maker to determine whether detention is warranted. The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.[5] The Parties are **ORDERED** to file a Joint Status Report by May 26, 2026, confirming that Petitioner has been released.

Lastly, Petitioner's attorney is directed to submit an attorney fee application and corresponding billing records within thirty (30) days of this Order, and Respondents are instructed to file any opposition within fourteen (14) days of Petitioner's attorney fee application.

**IT IS SO ORDERED.**

Dated: May 22, 2026

Hon. Janis L. Sammartino
United States District Judge

---

[5] This relief has been granted in similar matters. *See, e.g., Matute*, 807 F. Supp. 3d at 1133; *Pinchi*, 792 F. Supp. 3d at 1038; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 25-CV-1035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).

26-CV-2474 JLS (BJW)